UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARCY MARIE GALVAN,<br><br>Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY, Acting Commissioner of Social Security,[1]<br><br>Defendant. | No. 1:23-cv-00169-DAD-SCR<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401-34, and supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f. For the reasons that follow, the undersigned recommends that Plaintiff's motion for summary judgment be denied and that the Commissioner's cross-motion for summary judgment be granted.

**I. PROCEDURAL BACKGROUND**

Plaintiff applied for DIB and SSI on January 25, 2019. Administrative Record ("AR") 297.[2] Plaintiff alleged the disability onset date was March 1, 2012. AR 297, 306. The

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted as the defendant in this suit.
[2] The AR is electronically filed at ECF No. 11-1 and 14-1.

1

applications were disapproved initially (AR 141, 146), and on reconsideration (AR 154, 160). On May 21, 2020, administrative law judge ("ALJ") Sanya Hill-Maxion presided over a hearing on plaintiff's challenge to the disapprovals. AR 50-81 (transcript). The hearing was continued to obtain additional evidence. A second hearing was held on August 20, 2020, and a third hearing on August 12, 2021. AR 35-49, 1073-1119 (transcripts). Plaintiff was present and testified at all three hearings. She was represented by an attorney at the hearings. AR 35, 50, 1073. David Peterson, Ph.D., a medical expert, and Jane Colvin-Roberson, a vocational expert, also testified.

On February 2, 2022, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Sections 216(i), 223(d), and 1614(a)(3)(A) of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 15-29 (decision). On December 12, 2022, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-3 (decision).

Plaintiff filed this action on February 2, 2023. ECF No. 1. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 15 (Plaintiff's summary judgment motion), 17 (Commissioner's summary judgment motion), 19 (Plaintiff's reply).

## II.  FACTUAL BACKGROUND

Plaintiff was born in 1971, and was 47 years old when she filed her application, and 48 years old at the time of the first hearing. AR 58. Plaintiff has a high school education and attended two years of junior college. AR 42, 58. She alleged disability based on bipolar disorder. AR 342. Plaintiff stated she had last worked in 2012, and stopped working due to worsening mental health issues. AR 338, 342. In 2012, she was working as a cashier at Lowe's and testified she quit because she was "having some troubles with other coworkers." AR 58.

## III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . .'" *Andrews*

*v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Desrosiers v. Secretary of HHS*, 846 F.2d 573, 576 (9th Cir. 1988); *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss.").

The court will not reverse an erroneous decision if the error was harmless. In this context, an error is harmless only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Commissioner*, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

# IV.  RELEVANT LAW

A claimant is "disabled" if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b); 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

*Id*., §§ 404.1520(a)(4)(ii), (c); 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

*Id.,* §§ 404.1520(a)(4)(iii), (d); 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

*Id.*, §§ 404.1520(a)(4)(iv), (e), (f); 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Id.*, §§ 404.1520(a)(4)(v), (g); 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a), 416.912(a) ("In general, you have to prove to us that you are

blind or disabled"); *Bowen*, 482 U.S. at 146 n. 5.  However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012); *Bowen*, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

> 1. [Step 1] The claimant has not engaged in substantial gainful activity since March 1, 2012, the alleged onset date (AR 18).
>
> 2. [Step 2] The claimant has the following severe impairments: bipolar I disorder and bereavement (AR 18).
>
> 3. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (AR 19).
>
> 4. [Preparation for Step 4] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels.  However, the claimant is able to perform simple and repetitive tasks and have occasional contact with the general public and frequent contact with supervisors and coworkers. (AR 20).
>
> 5. [Step 4] The claimant is unable to perform any past relevant work. (AR 27).
>
> 6. [Step 5] The claimant was born [in] 1971 and was 40 years old, which is defined as a "younger individual" on the alleged onset date. (20 CFR §§ 404.1563 and 416.963) (AR 27).
>
> 7. [Step 5, continued] The claimant has at least a high school education (AR 27).
>
> 8. [Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2) (AR 27).
>
> 9. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (AR 27).
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2012 through the date of the ALJ's decision. (AR 28).

## VI.  ANALYSIS

Plaintiff alleges that the ALJ erred by (1) not providing clear and convincing reasons for discounting Plaintiff's testimony regarding her mental dysfunction; (2) improperly evaluating the medical opinions of consultative examiner psychologist Jacklyn Chandler, Ph.D., psychiatric nurse practitioner Ebele Mbeledogu, and State agency psychiatrist J. Collado, M.D.  ECF No. 15 at 7-8.

### A.  The ALJ Adequately Supported the Decision to Discount Plaintiff's Testimony

The ALJ discounted Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her mental dysfunction.  Evaluating the credibility of a plaintiff's subjective testimony is a two-step process: First the ALJ must "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged....  In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted).  Objective medical evidence of the asserted pain or fatigue itself is not required.  *Id.*  (internal citations omitted).

Second, if the ALJ does not find evidence of malingering, the ALJ may only reject the claimant's testimony by offering "specific, clear and convincing reasons for doing so."  *Id.*  (internal citations omitted).  While an ALJ's credibility finding must be properly supported and sufficiently specific to ensure a reviewing court the ALJ did not "arbitrarily discredit" a claimant's subjective statements, an ALJ is also not "required to believe every allegation" of disability.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  In weighing a claimant's credibility, an ALJ may consider, among other things, inconsistencies either in the claimant's testimony or between her testimony and her conduct, claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains.  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).  "If the ALJ's credibility finding is supported by substantial evidence in the

record, [the court] may not engage in second-guessing." *Id.* at 959.

Plaintiff testified that she was unable to work due to depressive episodes and insomnia. AR 61. She described having trouble concentrating and poor memory. AR 62. She stated that sometimes her depression caused her to isolate from other people. AR 63. At the first hearing, she testified she stopped working because she "was having some troubles with other coworkers." AR 58. At her second hearing, she stated she stopped working because she was "having trouble with bipolar." AR 43. She testified that her condition "ebbs and flows" and that she would miss too much time at work to resume employment. AR 1080. Plaintiff testified that she believed her condition had gotten worse after her partner died in November 2016. AR 65. At the third hearing in August 2021, she stated that the past year had been "really terrible" because her mother had died and she had attempted suicide. AR 1083.

The ALJ considered and summarized Plaintiff's testimony. AR 21. The ALJ found that plaintiff's medical impairments "could reasonably be expected to cause the alleged symptoms; however, the plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 26. The ALJ gave at least three adequate reasons for discounting Plaintiff's testimony.

First, the ALJ discounted Plaintiff's subjective testimony because it was inconsistent with the objective medical evidence. AR 21 ("the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations."). An ALJ must consider the objective medical evidence along with other evidence when evaluating the reliability of symptom testimony. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); *see also Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony.") (emphasis in original). In this case, mental status examinations frequently revealed objective findings that were within normal limits. For example, Plaintiff testified to difficulties with concentration and poor memory, but the ALJ cited to several findings in the medical record where concentration was good and memory intact. AR 22, *citing* 506, 522, 524, 526, 528-29.

7

These records cited by the ALJ are from 2019 and 2020 and indicate Plaintiff was doing well. AR 506 (medication "effective in controlling her symptoms" and "can function well now"); 522 ("anxiety under control and she has good mental function"); 526 (Plaintiff is "doing well," denies anxiety, mood swings, and suicidal ideation, is helping mother with cooking, laundry, and driving); 528 (Plaintiff is "doing well," and "mental function is good," she "denies anxiety, depression"). The ALJ reasonably concluded that Plaintiff's alleged symptoms were somewhat inconsistent with the objective medical evidence.

Second, the ALJ found that Plaintiff's symptoms were often well controlled with medication. AR 21-24. The ALJ noted that in 2012 Plaintiff reported "doing fine and well with medication." AR 22 *citing* 446-47. The ALJ found that "[i]n 2019 and 2020, treatment notes stated that the claimant's medication was effective in controlling her symptoms including her anxiety and stabilizing her mood." AR 22 *citing* 506, 522, 524, 530. The ALJ also observed that the consultative examiner Dr. Chandler found that "claimant's psychiatric symptoms appeared to be mostly controlled by medication." AR 24. The effectiveness of medication is relevant to the evaluation of a claimant's symptom testimony. 20 C.F.R. §§ 404.1529(c)(3)(iv); 416.929(c)(3)(iv). An ALJ may reject a claimant's allegations based on "evidence suggesting that [the claimant] responded well to treatment" for the mental impairment(s) at issue. *Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996). Impairments that can be effectively controlled with medication are not disabling for the purpose of determining eligibility for Social Security benefits. *Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

The ALJ also recognized and discussed times when Plaintiff was hospitalized, such as July 2020, when she presented "with a great amount of stress, exhaustion, and depressive symptoms." AR 22. Plaintiff's mother had recently been diagnosed with terminal cancer. *Id*. Plaintiff returned to the hospital the next month reporting suicidal ideation after her mother passed away. AR 22, *citing* 818. The ALJ noted that after discharge from the hospital in August 2020, Plaintiff was no longer feeling suicidal, her mental status examination was generally normal, and she was doing better and coping well. AR 23, *citing* 1008 (Plaintiff reports "doing better and coping well").

The ALJ also discussed Plaintiff's hospitalization in January/February 2021. AR 23. The ALJ found that after the hospitalization in February 2021, Plaintiff "repeatedly reported not experiencing symptoms and feeling good." AR 24, *citing* 838, 840, 850, 884. Records support the ALJ's conclusion. In April 2021, Plaintiff reported she was "feeling great about life," and that her medications continued to work. AR 884. She further stated that grief counseling had been helpful and although she still experienced depression, she was able to maintain her activities of daily living independently. AR 884. In May 2021, Plaintiff reported that she was not feeling depressed and that she was managing her mental health by keeping herself busy and improving her social functioning. AR 850. She was encouraged by her provider "to continue utilizing healthy coping skills such as walking her dogs and doing arts and crafts." AR 850. At a June 17, 2021 visit, Plaintiff presented as "cheerful" and was "friendly and cooperative." AR 840. Plaintiff again reported that engaging in social activities made her feel better. AR 840 ("The client expressed that engaging in social activities such as going to the zoo and fruit picking at a farm with peers has helped her not feel depress.").

The waxing and waning of symptoms is a feature of bipolar disorder. *Attmore v. Colvin*, 827 F.3d 872, 878 (9th Cir. 2016). And while isolated incidents of improvement are not sufficient on their own to show overall symptom reduction or effacy of medication, here the record reflects that the ALJ reasonably concluded that the broader context reflected symptom improvement with medication. *See Attmore*, 827 F.3d at 877 (stating an ALJ may not "pick out a few isolated instances of improvement," but may choose examples indicative of a "broader development"). The ALJ reasonably considered this body of evidence as a whole, including both Plaintiff's hospitalizations and the numerous reports spanning several years which indicated Plaintiff's symptoms were well controlled with medication, when discounting Plaintiff's allegations of debilitating mental health symptoms.

Third, the ALJ found that Plaintiff's activities of daily living were "not limited to the extent one would expect, given her complaints of disabling symptoms." AR 21. The ALJ noted that Plaintiff was able to "navigate public transportation, drive a car, dress and groom herself, shop in stores, maintain a friendship, and do simple household chores such as washing dishes,

doing laundry, and preparing meals." AR 21.  An ALJ may discount a claimant's subjective symptom testimony when the limitations described are inconsistent with a claimant's activities of daily living. *See Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021) (finding that claimant's daily activities which included playing video games, watching TV, using library computer, using public transport, shopping, preparing meals, and socializing constituted substantial evidence to support the ALJ's decision).  Here, substantial evidence supports the ALJ's decision.  Plaintiff reported to Dr. Chandler in 2019 that she was able to complete such daily activities.  AR 491.  In September 2020, Plaintiff reported her mental function as good and that she was going to a friend's house on weekdays, Monday through Friday, to help her friend with children's virtual learning.  AR 1002.  She reported she was recently in contact with her brother, and living with her sister. *Id*.  The ALJ could reasonably find such activities inconsistent with Plaintiff's allegations of disabling symptoms.

For the reasons described above, the court finds that the ALJ did not err in discounting plaintiff's testimony because she provided specific, clear, and convincing reasons for doing so.

### B. The ALJ Did Not Commit Reversible Error in Assessing the Medical Opinions

Plaintiff asserts that the ALJ did not properly evaluate the medical opinion of examining Dr. Chandler, the opinion of treating nurse practitioner (NP) Mbeledogu, or of non-examining State agency psychiatrist J. Collado, M.D.  ECF No. 15 at 15-22.  With respect to medical opinions, new regulations apply to claims filed on or after March 27, 2017, which changed the framework for evaluation of medical opinion evidence. Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  The new regulations provide that the ALJ will no longer "give any specific evidentiary weight ... to any medical opinion(s)" but instead must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources and evaluate their persuasiveness. Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b); *see also Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022) ("For claims subject to the new regulations, the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the

doctor's relationship with the claimant—no longer applies. Now an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence.").

The factors for evaluating the persuasiveness of a physician opinion include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The Ninth Circuit has confirmed that the new regulatory framework eliminates the "treating physician rule" and displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. *Woods*, 32 F.4th at 792. Still, in rejecting any medical opinion as unsupported or inconsistent, an ALJ must provide an explanation supported by substantial evidence. *Id.* In sum, the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

1. <u>Consultative examiner Jacklyn Chandler, Ph.D</u>

Dr. Chandler examined Plaintiff in April 2019, and opined that "based on reported psychiatric history" she may have moderate to marked impairment in interacting with the public, supervisors, and coworkers. AR 492. Dr. Chandler also opined: "At present, the claimant's psychiatric symptoms appear to be mostly controlled by medication." AR 492. The ALJ discussed Dr. Chandler's examination findings in detail. AR 24. Dr. Chandler noted that Plaintiff was currently taking medication for her mental health condition and it "was helpful in

reducing her symptoms." AR 491. Plaintiff reported to Dr. Chandler that she was able to dress and groom herself; take public transport and drive; perform household chores; prepare simple meals; and go grocery shopping alone. AR 491. On mental status examination she was cooperative, alert, and fully oriented. AR 491. Her intelligence was intact, concentration good, and thought process and content was linear and logical. AR 491-2. Although Dr. Chandler reported her concentration was "good" and attention "fair," she also stated that Plaintiff had "mild difficulty maintaining attention and concentration," and that based on her reported psychiatric history Plaintiff's "ability to interact with the public, supervisors, and coworkers is likely to be moderately to markedly impaired." AR 491-92.

The ALJ found Dr. Chandler's opinion to be partially persuasive. AR 26. The ALJ found the opinion was supported by the report of examination, but it was also inconsistent with other evidence of record, including the testimony, statements, and opinion of medical expert Dr. Peterson. AR 26.

Dr. Peterson testified as a medical expert in the hearings before the ALJ. AR 35, 50, 1073. Dr. Peterson also completed a medical interrogatory in which he opined that Plaintiff would have mild limitations in understanding, remembering, and applying information and in concentrating, persisting, and maintain pace. AR 834. He also opined Plaintiff would have moderate limitations in interacting with others and adapting or managing oneself. AR 834. Dr. Peterson's response to the interrogatory identified numerous mental status examinations ("MSE") of Plaintiff in the record with many findings that were within normal limits ("WNL"). AR 830-31, *see for example* 396, 401, 406, 491-92, 506, 522, 524. The ALJ found Dr. Peterson's opinion persuasive. AR 25. The ALJ found it was supported by his testimony and notes upon review of Plaintiff's longitudinal medical history, and consistent with the evidence, including mental status examinations. AR 25.

The ALJ reasonably found Dr. Chandler's opinion to be partially persuasive.

2. Nurse Practitioner Ebele Mbeledogu

NP Mbeledogu was a treating provider for Plaintiff. She completed a one-page medical source statement in November 2019, and noted that Plaintiff can become overwhelmed when

completing simple or complex tasks causing difficulties concentrating and paying attention. AR 520. She opined that Plaintiff had difficulty engaging with coworkers and the public, and that her depression can cause her to isolate and miss work. AR 520. NP Mbeledogu believed Plaintiff may miss 10 days of work per month due to her symptoms. AR 520.

The ALJ found this opinion was not persuasive. AR 26. The ALJ found that the opinion was not supported by NP Mbeledogu's own treatment notes, and it was inconsistent with the opinion of Dr. Peterson. AR 26. The ALJ's conclusion that the opinion was not supported by NP Mbeledogu's treatment notes is supported by substantial evidence. For example, NP Mbeledogu's note from a visit on April 21, 2021 states that Plaintiff "reports good appetite and sleep. She reports good mental health. She states that her medications are effectively controlling her symptoms at the current dose. She denies delusion, hallucination, SI, HI, depression, anxiety, or mood swings." AR 872. At a visit in November 2020, Plaintiff stated she "currently has no concern" and denied depression or anxiety. AR 988. In September 2020, Plaintiff reported to NP Mbeledogu that her medication was effectively controlling her symptoms. AR 1002. Plaintiff reported her sleep and appetite were good, she had recently been in contact with her siblings, and she was going to a friend's house Monday through Friday to assist with virtual learning. AR 1002. Similarly, when NP Mbeledogu saw Plaintiff in December 2018, she noted she was "responding positively" to medication, her sleep was good, her attention, concentration, insight, and judgment were all good. AR 396. In March 2019, NP Mbeledogu wrote that Plaintiff's medication was effective in controlling her symptoms and she "can function well now." AR 506. She reported sleeping well, and less anxiety. AR 506.

The ALJ reasonably found NP Mbeledogu's opinion to be not persuasive as the limitations described were not supported by her own treatment notes.

3. <u>State agency psychiatrist J. Collado, M.D.</u>

Dr. Collado found that there was insufficient evidence prior to Plaintiff's date last insured (September 30, 2012) to make an assessment, but that Plaintiff was in 2019 able to sustain one to two step instructions with limited contact with others. AR 88, 103.

The ALJ found this opinion to be partially persuasive. AR 26. The ALJ found there was

13

sufficient evidence to make a disability decision and that the evidence including the opinion of Dr. Peterson was "most consistent with a finding that the claimant is able to perform simple and repetitive tasks and have occasional contact with general public and frequent contact with supervisors and coworkers." AR 26.

The ALJ also cited to the prior administrative medical finding of State agency psychological consultant, E. Murrillo, M.D., who found that Plaintiff could perform simple and less complex tasks, can perform unskilled and semiskilled work only, cannot perform detailed or skilled tasks, and can interact appropriately with others. AR 26 *citing* 112-137. The ALJ explained that based upon the opinion of Dr. Peterson, the appropriate limitation for Plaintiff was to simple and repetitive tasks, occasional contact with the general public, and frequent contact with supervisors and coworkers. The ALJ is responsible for translating and incorporating clinical findings into a succinct residual functional capacity. *See Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1006 (9th Cir. 2015). The ALJ reasonably evaluated the medical opinion evidence and explained her findings. The ALJ's decision is supported by substantial evidence.

## VII.  CONCLUSION

Plaintiff alleged disability beginning in 2012. The record does not support that she was disabled prior to her date last insured of September 30, 2012, and thus her DIB claim fails. Plaintiff had the burden to prove disability. *See Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) ("The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times, the burden is on the claimant to establish entitlement to disability insurance benefits.") (cleaned up). In an attempt to meet that burden, Plaintiff relies more heavily on incidences of hospitalization in 2020 and 2021. ECF No. 15 at 2. However, as set forth above, evidence in that same time period showed that Plaintiff's symptoms were often well controlled with medication. Evidence of Plaintiff's improvement with medication, Dr. Peterson's testimony and medical interrogatory, and Plaintiff's numerous mental status examinations which showed largely normal findings constitute substantial evidence supporting the ALJ's non-disability finding. Accordingly, for the reasons set forth above:

**IT IS HEREBY RECOMENDED** that plaintiff's motion for summary judgment (ECF No. 15)

14

be DENIED, that the Commissioner's cross-motion for summary judgment (ECF No. 17) be GRANTED, and that judgment be entered in favor of the Commissioner and the case closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  *Id.*; *see also* Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: September 5, 2024

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE